**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DAVID LEE FAIR**                                                                                                      **PLAINTIFF**

**VS.**                               **CIVIL ACTION NO. 1:08CV239-SA-DAS**

**SOCIAL SECURITY ADMINISTRATION**                              **DEFENDANT**

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of the claimant, David Lee Fair, for disability benefits. The parties have not consented to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

## I. PROCEDURAL AND FACTUAL HISTORY

On October 25, 2005, the claimant filed an application for a period of disability and disability insurance benefits under Title II, alleging a disability onset date of January 5, 2001. The application was denied both initially and upon reconsideration, and the claimant requested and was granted a hearing before an administrative law judge ("ALJ"). In a hearing decision dated June 25, 2008, the ALJ found the claimant was not disabled. The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied the claimant's request for review on September 10, 2008. The ALJ's June 2008 decision is now ripe for review under section 205(g) of the Social Security Act. *See* 42 U.S.C. § 405(g).

The claimant was born in 1969 and was 38 years of age at the time of the hearing decision on June 25, 2008. He had a high school education. The claimant previously worked as a truck

loader, pallet maker, and saw operator. He alleged that beginning January 5, 2001, he could no longer work due to emotional and mental problems.

The ALJ determined that the claimant had severe impairments, including chronic pain syndrome, depression and a history of drug and alcohol dependency. However, after considering Listing 1.04, regarding the claimant's back problem and Listing 12.04, regarding his mental impairment, the ALJ found the claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. Next, after consideration of the entire record, the ALJ found that through the date last insured, the claimant had the following residual functional capacity ("RFC"):

> to lift and/or carry up to 25 pounds on a frequent basis and up to 50 pounds on an occasional basis; to stand and/or walk for a total of up to six hours per eight-hour workday; and to sit (with normal breaks) for a total of up to six hours per eight - hour work day; in addition, he is to have the option to alternate at will between sitting and standing; he is restricted to simple, routine tasks; and he is to avoid more than occasional and incidental interaction with the general public.

Furthermore, relying upon the testimony of a vocational expert ("VE"), the ALJ determined that the claimant could not perform his past relevant work but, considering his age, education, work experience, and RFC, he could perform other jobs in the local and national economies, including plant laborer and home personal attendant.[1]

---

[1] The ALJ found the claimant last met the insured status requirements of the Social Security Act on September 30, 2005. Because the claimant's Title II insured status expired on September 30, 2005, he must establish that he became disabled on or before that date to be eligible for benefits. *See Barraza v. Barnhart*, 61 Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (*citing Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *See id.* (*citing Torres v. Halala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995) ).

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] First, claimant must prove she is not currently engaged in substantial gainful activity.[4] Second, the claimant must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude the claimant is disabled if she proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[6] Fourth, the claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[7] If the claimant is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8]

---

[2]*See* 20 C.F.R. §§ 404.1520 (2008).

[3]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[4]20 C.F.R. §§ 404.1520(b) (2008).

[5]20 C.F.R. §§ 404.1520(c) (2008).

[6]20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

[7]20 C.F.R. §§ 404.1520(e) (2008).

[8]20 C.F.R §§ 404.1520(f)(1) (2008).

If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work.[9]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir.

---

[9]*Muse*, 925 F.2d at 789.

1994).

## III. ANALYSIS

The court has reviewed the briefs of the parties, and it appears that the claimant did not abide by this court's standard order requiring that he set out those issues upon which he has filed the instant appeal. Indeed, in his handwritten brief, the claimant devotes most of his space to describing his alleged schizophrenia. Nevertheless, while the plaintiff's brief fails to coherently set forth arguments supporting an alleged absence of substantial evidence to support the Commissioner's findings and decision, the record of the entire administrative proceedings filed by the defendant is sufficient to show the presence or absence of such evidence. And, for the reasons set out below, the concludes that the ALJ committed no apparent legal errors, and his decision is supported by substantial evidence.

In this case the ALJ properly analyzed the claimant's disability claim under the sequential evaluation process. The court finds it necessary to examine only those steps of the process where the ALJ made findings that could be considered adverse to the claimant. In doing this, the court will not recite all of the medical evidence but will instead discuss whether substantial evidence supports each of the ALJ's findings.

A. Step Two

The ALJ made a step two determination that the claimant had severe impairments, including chronic pain syndrome, depression, and a history of drug and alcohol dependency. However, though he did not make an express finding, it can be clearly inferred that the ALJ found the claimant's back and right knee problems were non-severe. In the Fifth Circuit, the standard for non-severity is as follows:

5

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984). The ALJ recited and correctly applied this standard. Among other evidence, the ALJ noted that the claimant saw James Pace, M.D. in January 2001 for his complaints of lower back pain. His physical examination was unremarkable, however, and he was given samples of Vioxx and Flexeril and told to return if his condition did not get remarkably better. The ALJ noted the claimant did not return to Dr. Pace until over a year later, at which time he requested that disability forms be completed. Additionally, the claimant was seen at Europa Family Medical Clinic in April 2001 for complaints of low back pain. His examination was normal and he was given additional samples of Vioxx. The claimant was not examined or treated for back pain again until January 2006, when he underwent a consultative examination by Jim Adams, M.D. The claimant complained of low back and rib pain, right knee pain and left wrist pain. Dr. Adams found no abnormalities of his gait, range of motion, strength, nerves, sensation or motor functioning, however. Straight leg raising was negative; he had normal lumbar flexion; and he was able to squat "all the way" without difficulty. An x-ray study of the claimant's lumbar spine identified no abnormalities. Dr. Adams noted that though the claimant carried a cane, he could walk normally without it. Also, there were no signs of crepitus, swelling or laxity in the knee.[10] The court finds that based on the foregoing, the ALJ's step two determination is supported by substantial evidence.

---

[10] During the hearing, the claimant's non-attorney representative stipulated to the fact that the claimant really had no physical problems.

B. Step Three

At step three, the ALJ found that through the date last insured, September 30, 2005, the claimant did not have an impairment or combination of impairments that alone or in combination met or equaled a listed impairment. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). The ALJ noted that he considered Listing 1.04 regarding the claimant's back problem. The ALJ pointed out that there was no objective medical evidence of nerve root compromise, motor loss, positive straight leg raising, sensory or reflex loss, spinal arachnoiditis, pseudoclaudication, nor inability to ambulate effectively.[11] Furthermore, upon initial review, state agency physician Carol Kossman, M.D., reviewed the claimant's medical records with regard to his diagnosis of lumbar strain and concluded that he was not disabled. *See* 20 C.F.R. § 404.1527(e)*; Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996) (stating that the ALJ may rely upon the opinion of a non-examining physician in determining whether a claimant

---

[11] Listing 1.04 describes disorders of the spine:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) [or two other sets of symptoms not relevant here].

20 C.F.R. Pt. 404, Subpt. P.App. 1 § 1.04.

meets a Listing).

With regard to the claimant's mental impairment, the ALJ considered Listing 12.04.[12]

---

[12] Listing 12.04 addresses "affective disorders" and provides that a claimant is disabled if he has a sufficiently severe "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing states that "[t]he required level of severity for these disorders is met when the requirements in both [subsections] A and B are satisfied." These subsections are as follows:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>    a. Anhedonia or pervasive loss of interest in almost all activities; or
>    b. Appetite disturbance with change in weight; or
>    c. Sleep disturbance; or
>    d. Psychomotor agitation or retardation; or
>    e. Decreased energy; or
>    f. Feelings of guilt or worthlessness; or
>    g. Difficulty concentrating or thinking; or
>    h. Thoughts of suicide; or
>    i. Hallucinations, delusions or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>    a. Hyperactivity; or
>    b. Pressure of speech; or
>    c. Flight of ideas; or
>    d. Inflated self-esteem; or
>    e. Decreased need for sleep; or
>    f. Easy distractibility; or
>    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>    h. Hallucinations, delusions or paranoid thinking; or
>
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes); AND
>
> B. Resulting in at least two of the following:
>
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or

The ALJ found the claimant did not meet this listing because the B criteria for the listing was not satisfied. "[T]he required level of severity [for listing 12. 04] is met when the requirements in both [subsections] A and B are satisfied." *Boyd v. Apfel,* 239 F.3d 698, 703 n. 8 (5th Cir.2001) (internal quotation marks omitted).

The record contains a Psychiatric Review Technique Form completed by State agency medical consultant Marvin Blase in February 2006. This form indicated that the claimant's mental impairment did not "precisely satisfy the diagnostic criteria" for the "A" section of Listing 12.04 and that he had a mood disorder not otherwise specified.[13] Furthermore, he indicated that the claimant had no episodes of decompensation and only moderate functional limitations with respect to the B criteria. In his notes, Mr. Blase noted that while the claimant had been hospitalized for psychiatric treatment for a mood disorder not otherwise specified and for possible schizoid personality, he was not currently receiving psychiatric treatment. Additionally, Mr. Blase noted that the claimant's recent psychiatric consultative examination showed he retained sufficient abilities to function in relevant areas necessary to maintain work;

---

> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

> 20 C.F.R. pt. 404, subpt. P, app. 1, listing 12.04.

[13] Mr. Blase determined, however, that the claimant met the A criteria for Listing 12.08 Personality Disorders and Listing 12.09 for Substance Addiction Disorders. However, because the claimant failed to satisfy the B criteria as noted above, his condition did not meet or equal either listing.

that third party functional data indicated he could complete tasks and interact with others; and that he ceased work secondary to back problems, not psychiatric considerations. Based on the foregoing, the court finds the ALJ's determination at step three was supported by substantial evidence.

C. RFC & Step Four

Before continuing to step four, the ALJ made a determination regarding the claimant's RFC. The ALJ determined that the claimant had an RFC for work at the medium exertion level. Additionally, the claimant required a sit/stand option; restriction to simple, routine tasks; and avoiding more than occasional and incidental interaction with the general public. The ALJ pointed out that in making this finding he considered all of the claimant's symptoms, to the extent they could be reasonably accepted as consistent with the objective medical evidence and the opinion evidence of record. Accordingly, the ALJ found the plaintiff's subjective complaints about the persistence and intensity, and limiting effects of his symptoms less than fully credible. For example, the record failed to show any significant knee or back problem, despite the claimant's posturing and use of a cane. And, with regard to the claimant's mental impairment, the medical evidence revealed and the claimant's own testimony showed that prior to the date he was last insured, he had received sporadic mental health counseling; his mood and emotional problems could not separated from his drug and alcohol abuse, and he was on no medication, despite complaints of depression.[14] Ultimately, in his decision, the ALJ noted that he attributed

---

[14] Interestingly, the claimant testified that he had been incarcerated from April 2002 until October 2005 and that prison conditions caused his mental and emotional problems. He said during his incarceration doctors treated him with antibiotics for his back pain, but he was told that nothing was wrong with his state of mind.

substantial weight to the State agency physician's 2002 assessment of the claimant's mental ability to perform work-related activities which showed the claimant had the RFC to perform simple, routine tasks, with only moderate limitations of persistence and adaptation. Based on the foregoing, the court finds the ALJ's credibility determination and RFC finding are supported by substantial evidence.

Ultimately, at step four the ALJ determined that the claimant's RFC would not allow him to perform his past work. During the hearing, the claimant testified that he had previously worked as a truck loader, pallet maker, and saw operator. The VE testified that each of these jobs was rated at the heavy exertion level. Accordingly, the court finds the ALJ's step four determination was supported by substantial evidence.

D. Step Five

At step five the ALJ further relied upon the testimony of the VE in determining that the plaintiff , though unable to perform his past work, was capable of performing other jobs. The ALJ asked the VE to consider whether a person of the plaintiff's age, education, job experience, and RFC could perform any jobs that existed in significant numbers in the national economy. The vocational expert opined that such a person could perform jobs including a plant laborer and home personal attendant. The ALJ found the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles* and concluded that the claimant was not disabled through the date he was last insured. Because the ALJ's conclusion is consistent with his findings regarding the claimant's limitations and because the claimant failed to present any evidence rebutting the finding that he could perform other work, the court finds the ALJ's step five determination was supported by substantial evidence and that the

Commissioner's decision should, therefore, be affirmed.

## IV. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the Commissioner's decision be affirmed.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the appropriate procedure in the event any party desires to file objections to these findings and recommendations. Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

Respectfully submitted this 28th day of August, 2009.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE